# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALLAN CIENIUCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 16 C 8356 |
| | ) |
| SOUTH OAK DODGE, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Allan Cieniuch has sued his former employer, South Oak Dodge, Inc. (South Oak) for age discrimination—specifically, disparate treatment—in violation of the Age Discrimination in Employment Act (ADEA). Cieniuch, who worked as a finance manager for South Oak, alleges that he was terminated because of his age and replaced by a significantly younger employee. South Oak has moved for summary judgment. For the reasons stated below, the Court grants summary judgment in favor of South Oak.

### Background

South Oak Dodge is a car dealership located in Matteson, Illinois. Garrett Guest has been the general manager of South Oak since the end of 2012. In April 2012, when Cieniuch was fifty-six years old, he was hired to work as a finance manager in South Oak's finance department, which is part of the dealership's sales department. After a customer agrees to buy a car for a particular price, it is the finance manager's job to

contact lenders to find the best financing option and to meet with the customer in order to sell additional products, including warranties and gap insurance. The sale of warranties and insurance products increases South Oak's profits, and a financed deal is more profitable for the dealership than a cash deal.

At the time Cieniuch was hired, South Oak already had one finance manager—Cieniuch was to be the second. From the time Cieniuch was hired until January 2015, South Oak operated with two finance managers, in accordance with its longstanding business model. When Cieniuch started, the other finance manager was Lisa Castillo. South Oak replaced Castillo with one of its salespeople, Jesus Maldanado, about a year and a half to two years later. Maldanado worked as a finance manager for only three months before returning to his sales role. Ryan Ganser replaced Maldanado as finance manager in mid-2014. In January 2015, Cieniuch was hospitalized, and he remained on medical leave until March. From March until July 2015, Cieniuch worked on a reduced schedule; he resumed his full work schedule in July 2015. In January or February 2015, during Cieniuch's absence, Guest moved salesperson Leo Estrada into the second finance manager position. There was a collaborative effort by those in the department to train Estrada.

Instead of returning to South Oak's traditional model when Cieniuch resumed his full-time schedule in July 2015, Guest kept on all three men—Ganser, Cieniuch, and Estrada—as finance managers. Guest testified that he made the decision to operate with three finance managers for two reasons: he was hopeful that South Oak would grow like it had from 2013 to 2014, and Estrada was doing a "very nice" job as a finance manager. Def.'s Statement of Facts (Def.'s SOF) Ex. B (Guest Dep.) 27:8-27:9.

2

Unfortunately, this optimism was short-lived. Although the numbers of new and used cars sold per month remained relatively steady between February 2015 and September 2015, Guest testified that he was concerned about South Oak's performance indicators for July through September. Specifically, Guest stated that, in addition to gross productivity[1] being down, in September, the dealership suffered a $280,000 loss.

Guest testified that he decided to terminate Cieniuch's employment at the end of September or the beginning of October 2015. Guest explained his decision to terminate Cieniuch as follows:

> We were looking at our business in terms of compensation and in terms of overall gross profit, and it became apparent that we were - - our payroll was heavy for the gross profit productivity of the sales department. And we ultimately came to the decision that we did not need three [finance] managers, and we needed to cut back on expenses given the month we were having and the fear of the direction of the business.

*Id.* 45:23-46:7.[2] At the time of his termination, Cieniuch was paid 3 percent of the gross profits generated by the sales and finance department. Ganser, by contrast, was being paid only 2 percent of sales department profits when Cieniuch was terminated. At that time, Estrada was being paid at a 1.55 percent rate. Under this compensation structure, as of October 2, 2015, Cieniuch's year-to-date gross pay was over $30,000 more than that of either Ganser or Estrada. *See* Def.'s SOF Ex. F at Exs. 1-3. At the time of Cieniuch's termination, Ganser was twenty-six years old, and Estrada was thirty-three.

When Guest was asked during his deposition whether there was any reason he

---

[1] Guest defined "gross productivity" or "gross profit productivity" as "the profit generated by the individual sale of each vehicle, new and used." Guest Dep. at 38:8-38:10.

[2] In August 2015, Cieniuch told Guest that South Oak did not need three finance managers.

3

decided to terminate Cieniuch as opposed to Ganser or Estrada, he testified that Ganser and Estrada had the confidence of the sales managers because they felt Ganser and Estrada "were more likely to push for higher profits per deal" than Cieniuch. Guest Dep. 46:15-46:16. According to Guest, when South Oak's salespeople made deals with customers, they would "try to give the finance manager room to sell something." *Id.* 46:24-47:1. Guest testified that Ganser and Estrada would attempt to sell warranties and insurance products beyond those for which the salespeople tried to set them up—a technique Guest referred to as "sell[ing] beyond the pad"—whereas Cieniuch tended to sell only the expected package of financial products for any given deal. *Id.* 47:11. When asked whether he recalled ever considering the possibility of terminating either Ganser's or Estrada's employment, Guest said no.

On October 3, 2015, Guest called Cieniuch into his office and told him he was being terminated. Cieniuch asked if he did anything wrong, and Guest said no. He told Cieniuch that he could not afford him. Cieniuch testified that he told Guest that he would take less money—specifically, that he would take what Ganser and Estrada were being paid—but Guest turned him down. When asked at his deposition whether Cieniuch offered to take a pay reduction during the October 3 meeting, Guest denied it.[3] Guest also testified that before informing Cieniuch of the termination, he discussed the possibility of terminating him with the sales management team, including Fred Cioffi and Ray Cioe, but both Cioffi and Cioe deny that any such discussion in advance of the termination occurred.

---

[3] Despite this denial, South Oak now appears to concede that Cieniuch did, in fact, make such an offer and that Guest rejected it. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. (Def.'s Mem.) at 5.

4

After Cieniuch's termination, Estrada and Ganser "assumed any tasks that would have or could have been assigned to [Cieniuch] if he was still employed" by South Oak. Pl.'s Statement of Additional Material Facts Ex. 1 at 3. Less than four months after Cieniuch was terminated, Estrada's pay as a percentage of gross profits increased from 1.55 percent to 2.3 percent—still less than the percentage Cieniuch had been paid. Since Cieniuch's termination, South Oak has hired new salespeople, but it has not hired a third finance manager. Shortly after Cieniuch's termination, Guest wrote him a letter of recommendation in which he described Cieniuch as "instrumental in growing the Finance Department to reach levels of Gross Revenue and Net Profit that were not realized at any point in the history of South Oak prior to his arrival." *Id.* Ex. 6. In the letter, Guest characterized Cieniuch's knowledge of finance and insurance products and his customer relations skills as "second to none" and also stated that Cieniuch "stood out amongst his fellow managers." *Id.*

This sequence of events has led Cieniuch to believe that his age was the real reason he was terminated while the much younger Ganser and Estrada were kept on as finance managers. Cieniuch testified that, while he was working at South Oak, certain salespeople and other managers would refer to him as "the old guy" or "the old man." Def.'s SOF Ex. C (Cieniuch Dep.) 33:12-33:13. He did not complain at the time because he thought it was a joke, but in hindsight, he believes these statements, too, were indicative of age discrimination. In February 2016, Cieniuch filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that he was terminated because of his age. After receiving a right-to-sue letter, Cieniuch filed the present ADEA age discrimination suit against South Oak in August

5

2016.

## Discussion

South Oak has moved for summary judgment. It contends that Cieniuch was terminated for financial reasons and that he has failed to produce evidence from which a reasonable inference of age discrimination can be made under the "direct" method of proof. South Oak also argues that Cieniuch cannot make out a prima facie case of age discrimination under any version of the burden-shifting framework adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is sometimes referred to as the "indirect" method of proof. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016).

Summary judgment is proper if there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Nicholson v. City of Peoria*, 860 F.3d 520, 522 (7th Cir. 2017). In considering a motion for summary judgment, the Court views all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Carson v. Lake County*, 865 F.3d 526, 532 (7th Cir. 2017). The Court will not, however, draw inferences that are supported by nothing more than "speculation or conjecture." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (citation omitted). Courts must be especially cautious in applying the summary judgment standard to employment discrimination cases, because such cases often will turn on intent and credibility issues. *See Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Nonetheless, "the mere existence of *some* alleged factual dispute between the parties" is insufficient to defeat a motion for summary

judgment. *Id.* (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[A] genuine issue of material fact exists only if there is enough evidence that a reasonable jury could return a verdict in favor of the nonmoving party." *Brown*, 700 F.3d at 1104.

The ADEA prohibits employers from taking adverse employment action against employees who are forty years of age or older because of their age. 29 U.S.C. §§ 623(a)(1), 631(a); *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). To establish a disparate treatment claim under the ADEA, the plaintiff must prove that age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). In *Ortiz v. Werner Enterprises, Inc.*, the Seventh Circuit clarified that the proper way for a court to assess an employment discrimination claim on summary judgment is to ask whether the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. The Seventh Circuit was careful to note, however, that courts remain free to apply the *McDonnell Douglas* burden-shifting framework to evaluate circumstantial evidence of but-for causation in the employment discrimination context. *Id.* at 766; *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Accordingly, the Court will first address whether Cieniuch has established a prima facie case of age discrimination under the burden-shifting framework, because that is how South Oak structures the bulk of its argument. *See David*, 846 F.3d at 224. The Court will then consider whether, burden-shifting aside, the cumulative admissible evidence would permit a reasonable factfinder to determine that

7

Cieniuch was terminated because of his age.

To establish a prima facie case of age discrimination under the *McDonnell Douglas* burden-shifting framework, the plaintiff must generally "come forward with evidence showing that (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Carson*, 865 F.3d at 533 (internal quotation marks and citation omitted). If the plaintiff establishes a prima facie case, the burden shifts to the defendant employer to articulate a "legitimate, nondiscriminatory reason" for her termination. *Id.* (citation omitted). If the employer provides such a reason, the burden shifts back to the plaintiff to submit evidence showing that the employer's explanation is pretextual. *Id.*

Under the burden-shifting framework, the fourth element of the prima facie case is modified when the termination involves what the Seventh Circuit has dubbed a "mini-reduction in force" (mini-RIF), where a plaintiff's position is not entirely eliminated, but her duties are instead "absorbed" by other employees. *See, e.g.*, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000). In such cases, the plaintiff need not establish that a similarly situated younger employee was treated more favorably, but rather only that "her duties were absorbed by younger workers who were retained following the mini-RIF." *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1060 (7th Cir. 2008).

Plaintiffs contend that Cieniuch's termination was a mini-RIF; South Oak disagrees. In this case, however, it is not necessary for the Court to decide the issue. Even if one assumes that Cieniuch can make out a prima facie case of discrimination,

he has not pointed to evidence from which a reasonable factfinder could find that South Oak's proffered reason for terminating him was pretextual.  South Oak contends that Cieniuch was fired because Guest decided they needed to cut costs by terminating one of the three finance managers and reverting to their two-finance-manager model.  According to South Oak, Guest selected Cieniuch for termination because he was the highest-paid finance manager by a significant margin and because Ganser and Estrada had the confidence of the sales managers due to their willingness to push for higher profits per deal.  The burden falls on Cieniuch to show that these reasons were simply a pretext for firing him.

To establish pretext, a plaintiff must do more than show that the given reasons for his termination were ill-advised; he must show that the employer did not honestly believe those reasons.  *See, e.g.*, *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 726 (7th Cir. 2008).  "Evidence that an employer lied about the reasons for an adverse employment action permits a trier of fact to infer that the decision was actually motivated by discriminatory animus."  *Baines v. Walgreen Co.*, 863 F.3d 656, 665 (7th Cir. 2017).  Cieniuch argues that he has presented sufficient evidence from which a reasonable factfinder could conclude that the reasons given for his termination were pretextual.  Specifically, Cieniuch contends that a reasonable factfinder could conclude, based on Guest's rejection of his offer to reduce his salary and his later denial that Cieniuch made such an offer, that Guest lied about his conversation with Cieniuch to hide the fact that he actually was terminated because of his age.  According to Cieniuch, the fact that Cioffi and Cioe dispute Guest's testimony that he discussed the possibility of terminating Cieniuch with them prior to October 3 serves as additional

evidence that Guest is lying to conceal the real reason for Cieniuch's termination. Cieniuch further contends that Cioffi's and Cioe's denial of Guest's assertions that he consulted them about the possibility of terminating Cieniuch undermines any assertion that the management team believed Estrada was performing better than Cieniuch. He also points to the fact that South Oak hired additional salespeople and increased Estrada's pay from 1.55 percent to 2.3 percent of gross profits after his termination as evidence that South Oak's cost-cutting justification was pretextual. Lastly, Cieniuch suggests that South Oak's 2015 car sales numbers undermine Guest's explanation for why he originally kept all three men on as finance managers after Cieniuch returned to work, instead of moving Estrada back to a sales position and reverting to the two-finance-manager model.

South Oak's decision to increase Estrada's pay and hire additional salespeople after Cieniuch's termination is not evidence from which a reasonable jury could find that the reasons given to Cieniuch for terminating him were pretextual *when they were given*. And Cieniuch's reference to South Oak's 2015 car sales is likewise immaterial: though Guest stated that he was anticipating and hoping that the dealership would grow enough to sustain a third finance manager position, he never said that the 2015 car sales were the reason for this optimism. What he actually said was that the company had experienced significant growth from 2013 to 2014, and although it was "kind of plateauing" from 2014 to 2015, "still there were signs that we were ready for an uptick, and we were always hopeful that the business was going to continue to grow." Guest Dep. 27:15-27:20.

With respect to Cieniuch's and Estrada's relative performance, Guest testified

that it was his understanding that Ganser and Estrada had the confidence of the sales managers because they "were more likely to push for higher profits per deal" than Cieniuch, but the "main reason" he terminated Cieniuch was because South Oak needed to cut back on expenses. *Id.* 46:11, 46:15-46:16. Cieniuch argues that his glowing recommendation letter and other performance metrics create a dispute of fact as to whether Estrada's performance was actually perceived to be superior to Cieniuch's. That factual dispute nonetheless is insufficient to defeat summary judgment because it does not undermine the assertion that Guest believed, at the time he made the decision to terminate Cieniuch, that Ganser and Estrada were more likely to push for higher profits per deal. *See Michas*, 209 F.3d at 692.

That leaves (1) Guest's rejection of Cieniuch's offer to reduce his salary, (2) Guest's subsequent denial that Cieniuch made such an offer, and (3) Cioffi's and Cioe's refutation of Guest's testimony that he discussed the possibility of terminating Cieniuch with them prior to October 3. Taking the evidence in the light most favorable to Cieniuch, it is possible to infer from these facts that Guest lied both when he denied that Cieniuch offered to take a pay reduction and when he said that he discussed the possibility of terminating Cieniuch with Cioffi and Cioe before actually terminating him. Nonetheless, not every conflict in testimony raises a triable issue. *Petts*, 534 F.3d at 727; *see also Swanson v. Leggett & Platt, Inc.*, 154 F.3d 730, 738 (7th Cir. 1998) ("An otherwise immaterial factual dispute does not give rise to a jury question just because a jury might disbelieve the defendant's position on that point and so conclude that the defendant must be lying across the board."); *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998) ("[T]he prospect of challenging a witness' credibility is not

alone enough to avoid summary judgment."). Taken together, the evidence fails to show that Guest lied about the underlying reasons for Cieniuch's termination, especially because the reasons given for his termination have been consistent. *See Petts*, 534 F.3d at 727. A reasonable factfinder could not conclude, on this record, that South Oak's reasons for Cieniuch's termination were pretextual and instead motivated by age discrimination. The Court therefore concludes that Cieniuch has failed to establish a genuine issue of material fact regarding pretext.

Lastly, a cumulative assessment of all the record evidence in this case confirms that a reasonable jury could not conclude that Cieniuch was fired because of his age.[4] *See David*, 846 F.3d at 227; *Ortiz*, 834 F.3d at 765. Cieniuch has testified that certain South Oak salespeople and managers would refer to him as "the old guy" or "the old man;" although he dismissed the comments at the time, he now believes that they are evidence of age discrimination. Cieniuch Dep. 33:12-33:13. South Oak moved the thirty-three year old Estrada from a sales position into a finance manager role in January or February 2015 to fill in while Cieniuch was on medical leave. Instead of returning Estrada to his sales position, Guest testified that he decided to operate with three sales managers—which he had not done before—because he was anticipating and hoping that the dealership would grow. Cieniuch contends that, from these facts, a

---

[4] The Court rejects Cieniuch's argument that South Oak somehow waived any argument that the cumulative evidence is insufficient for a reasonable jury to conclude Cieniuch was fired because of his age by framing its argument primarily in terms of the *McDonnell Douglas* burden-shifting framework. After expressly recognizing that, on a motion for summary judgment, the question is whether the evidence considered as a whole would permit a reasonable factfinder to conclude that the plaintiff's age caused his discharge, South Oak argued that the evidence did not support a reasonable inference of age discrimination. *See* Def.'s Mem. at 4-6.

12

reasonable jury could conclude that "Guest actually decided in March 2015 to train Estrada as Plaintiff's replacement, and accomplished this by keeping Plaintiff on as a Finance Manager for a period of time to unknowingly train his replacement." Pl.'s Resp. at 14. In light of his positive recommendation letter and other evidence that there was no performance-based reason for his termination, Cieniuch further argues that a jury could reasonably conclude that "it is highly unlikely Defendant would terminate an admittedly great employee that voluntarily offered to work for less pay unless Guest was engaging in ageism." *Id.* Finally, Cieniuch contends that the evidence that Guest lied about Cieniuch having offered to work for less pay and about consulting with his management team prior to Cieniuch's termination "reveals a deviation from the asserted decision making process that can only be explained by a discriminatory motive." *Id.*

Although a remark indicating animus, bias, or bigotry can raise an inference of discrimination if it was made by the decision maker and can be connected to the challenged decision, *see Perez v. Thorntons, Inc.*, 731 F.3d 699, 709 (7th Cir. 2013), that is not the case here. Cieniuch offers no evidence permitting a finding that the comments he overheard were connected with the termination decision. In addition, as previously explained, the fact that car sales were relatively steady for the first nine months of 2015 do not undermine Guest's explanation for why he decided not to return Estrada to a sales position after Cieniuch resumed working. And Cieniuch's suggestion that Guest actually decided to keep three finance managers on initially just so Cieniuch could train Estrada as his younger replacement is entirely speculative. *See Brown*, 700 F.3d at 1104.

It is undisputed that Cieniuch was the highest paid finance manager, and he did

13

not offer to work for less pay until after Guest had already made the decision to terminate him and, indeed, had told him he was being terminated. Though one would not expect Cieniuch to be prescient that he was about to be let go, the sequence of events actually *defeats* any reasonable inference of discriminatory intent on Guest's part arising from the level-of-pay issue. Specifically, at the time the evidence shows the decision to terminate Cieniuch was made, he *was* the highest paid finance manager; it was not until after the decision was made and communicated that he offered to reduce his salary. Any realization that Cieniuch would not actually have to be paid more than the other finance managers thus could not possibly have been taken into account by Guest when he decided to terminate Cieniuch. And nothing in the law required Guest to reconsider his already-made decision once Cieniuch offered to take a pay cut. The question is whether South Oak had a discriminatory purpose when it terminated Cieniuch, not whether it could have constructed the decision-making process better or differently.

In addition, though Guest testified that it was his understanding that Ganser and Estrada were more likely to "sell beyond the pad," whereas Cieniuch tended to sell only the expected package of financial products for any given deal, Guest has never claimed that he based his decision to fire Cieniuch primarily on performance issues. Guest Dep. 47:11. For the same reason, Cieniuch's claim that he was performing well does not contradict the reasons South Oak has given for terminating him. *Cf. Swanson*, 154 F.3d at 737 ("[P]laintiffs' claims that they were more experienced than their replacements and were performing well do not contradict Leggett's position that they were let go because Leggett concluded it was not getting its money's worth from competent but relatively

expensive and expendable employees."). And to the extent that Cieniuch argues that South Oak's decision to terminate him over Estrada was simply unsound, such an argument is unavailing. *See, e.g., David*, 846 F.3d at 229 ("Our role . . . is not to inquire into the wisdom of an employment decision, but simply to determine if 'the employer is dissembling to cover up a discriminatory purpose.'") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)).

Assuming that Guest did, in fact, lie about consulting with Cioffi and Cioe about Cieniuch's termination before the fact and about whether Cieniuch offered to work for less pay on October 3, the evidence—taken as a whole—remains insufficient to support Cieniuch's age discrimination claim. *See Lane v. Riverview Hosp.*, 835 F.3d 691, 697 (7th Cir. 2016) ("Even if we assume that Kuzee and the hospital deliberately misled the EEOC about her role in [an incident involving another employee], that would not by itself support the further inference of unlawful intent. And the rest of the support here is just too weak to allow a reasonable inference of discrimination."). Even when all reasonable inferences are drawn in Cieniuch's favor, a reasonable factfinder simply could not conclude from this record that Cieniuch was terminated because of his age.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [dkt. no. 24] and directs the Clerk to enter judgment in favor of defendant and against plaintiff.

                                                          _____
                                                          MATTHEW F. KENNELLY
                                                          United States District Judge

Date: March 16, 2018